UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES, | ) |
| | ) |
| v. | ) CR 04-10382 |
| | ) |
| SEALED | ) |
| Defendant | ) |

## MEMORANDUM OF GLOBE NEWSPAPER COMPANY, INC. IN SUPPORT OF MOTION FOR ACCESS TO COURT DOCKET AND CASE FILINGS

Globe Newspaper Company, Inc. (the "Globe") submits this memorandum in support of its motion for public access to the docket and case file in this action. As shown below, the public has a First Amendment right of access to the records and proceedings in this case that may be overcome only based on specific findings that closure is essential to preserve higher values and is narrowly tailored to serve those interests. A similar right of access exists under the common law. Because the case file is entirely closed to the public, the Globe does not know what grounds were asserted in support of a closure order. It is respectfully submitted, however, that a blanket order denying the public access to all proceedings and records in this case cannot meet the constitutional or common law standard for the closure of judicial proceedings.

### FACTS

The Globe has learned that the above-captioned criminal case has been sealed. Affidavit of Shelly Murphy in Support of Motion of Globe Newspaper Company, Inc. For Access to Court Docket and Case Filings ("Murphy Aff.") ¶ 5. The Globe also has identified at least eight other sealed criminal cases in this District Court since January. Id. ¶¶ 2-5. The Globe challenged two

LITDOCS/599583.1

of the closures in January, each of which subsequently was unsealed in whole or in part. *Id.* ¶¶ 2-3. The Globe currently is raising challenges similar to this one in the remaining six cases.

A search of the Court's CM/ECF system indicates that the docket sheet for this case is not available to the public. Affidavit of Neil McGaraghan ¶ 3. Indeed, results of a search run on CM/ECF under the case number assigned to this case state that the case does not exist. *Id.* ¶ 3.

In short, the Globe and the public have been denied access to any and all information about this case. As far as the public records are concerned, this case does not even exist.

## ARGUMENT

The complete exclusion of the press and public from this criminal case, without any showing that the closure is necessary any narrowly tailored, cannot be squared with the requirements of the First Amendment and the common law.

### A. Criminal Trials, Including Most Pretrial Proceedings, Are Presumptively Open To The Press And Public.

"[T]he public and the press enjoy a constitutional right of access to criminal proceedings under the First and Fourteenth Amendments." *In re Providence Journal*, 293 F.3d 1, 10 (1st Cir. 2002). *See Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 573-580 (1980) (murder trial); *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596 (1982) (rape of a minor); *Press-Enterprise Co., Inc. v. Superior Court*, 464 U.S. 501, 508 (1984) ("*Press-Enterprise I*") (jury voir dire); *Press-Enterprise Co. v. Super. Ct.*, 478 U.S. 1, 11-13, (1986) (*Press-Enterprise II*) (preliminary hearing); *In re Globe Newspaper*, 729 F.2d 47 (bail hearing).

The constitutional right of access extends to records submitted in connection with criminal proceedings. *Globe Newspaper Co. v. Pokaski*, 868 F.2d 497 (1st Cir. 1989); *Globe Newspaper*, 729 F.2d at 52; *Providence Journal*, 293 F.3d at 12-13. "The basis for this right is that without access to documents the public often would not have a 'full understanding' of the

proceeding and therefore would not always be in a position to serve as an effective check on the system." *Pokaski*, 868 F.2d 497 (1st Cir. 1989). *See also United States v. Martin*, 684 F. Supp. 341 (D. Mass. 1988); *In re The New York Times Company*, 828 F.2d 110, 114 (2d Cir. 1987); *Associated Press v. United States District Court*, 705 F.2d 1143 (9th Cir. 1983).

In accordance with these principles, the public's right of access applies not just to documents filed by the parties and rulings of the court, but also to docket sheets, without which the public would have no effective means of accessing judicial files. "In this respect, docket sheets provide a kind of index to judicial proceedings and documents, and endow the public and press with the capacity to exercise their rights guaranteed by the First Amendment." *Hartford Courant Co. v. Pelligrino*, 380 F.3d 83, 93 (2d Cir. 2004). *See Globe Newspaper Co. v. Fenton*, 819 F. Supp. 89 (D. Mass. 1993) (striking down statutory prohibition on public access to the alphabetical indices of completed criminal cases). Indeed, the "ability of the public and press to attend civil and criminal cases would be merely theoretical if the information provided by docket sheets were inaccessible." *Pelligrino*, 380 F.3d at 93

The public's constitutional right of access to case files and docket sheets serves two functions critical to public confidence in the criminal justice system. Perhaps most obviously, access promotes informed debate about the operation of the government, including law enforcement agencies and the judiciary itself. In the words of the Supreme Court:

> Underlying the First Amendment right of access to criminal trial is the common understanding that "a major purpose of that Amendment was to protect the free discussion of governmental affairs," [citation omitted]. By offering such protection, the First Amendment serves to ensure that the individual citizen can effectively participate in and contribute to our republican system of self-government. ... Thus, to the extent that the First Amendment embraces a right of access to criminal trial, it is to ensure that this constitutionally protected "discussion of governmental affairs" is an informed one.

*Globe*, 457 U.S. at 604-05.

Public access to the records of criminal proceedings also is an essential safeguard against abuses of governmental power, "discourag[ing] perjury, the misconduct of participants, and decisions based on secret bias or partiality." *Richmond Newspapers*, 448 U.S. at 569.

> The value of openness lies in the fact that people not actually attending trials can have confidence that standards of fairness are being observed; the sure knowledge that *anyone* is free to attend gives assurance that established procedures are being followed and that deviations will become known. Openness thus enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system.

*Press-Enterprise I*, 464 U.S. at 508. *See also Globe*, 457 U.S. at 606 ("Public scrutiny of a criminal trial enhances the quality and safeguards the integrity of the factfinding process, with benefits to both the defendant and to society as a whole. Moreover, public access to the criminal trial fosters an appearance of fairness, thereby heightening public respect for the judicial process. And in the broadest terms, public access to criminal trials permits the public to participate in and serve as a check upon the judicial process - an essential component in our structure of self-government.").

Because of the critical role public access plays in the functioning of the criminal justice system, orders closing criminal proceedings are rare and limited to the most unique of circumstances. As shown below, a blanket closure order covering the entire record of this case cannot satisfy the governing constitutional standard.

### B. Closure Is Improper Absent A Showing That It Is Essential To Preserve Higher Interests And Is Narrowly Tailored To Achieve Those Interests.

Recognition of the public's right of access to the records of these proceedings does not mean that the public never may be denied access to any portion of the record under any circumstances whatsoever. It does mean, however, that the barriers to exclusion of the public are extraordinarily high.

First, any contemplated order of impoundment must be preceded by a hearing at which the opponents of impoundment may be heard. *Globe Newspaper Co.*, 729 F.2d at 56 (court must allow members of the press an opportunity to be heard on the question of their exclusion); *Globe*, 457 U.S. at 609 n. 25.

Second, "[w]here ... the state attempts to deny the right of access in order to inhibit the disclosure of sensitive information, it must be shown that the denial is necessitated by a compelling governmental interest and is narrowly tailored to serve that interest." *Globe*, 457 U.S. at 506-507; *Press-Enterprise II*, 478 U.S. at 13-14; *Pokaski*, 868 F.2d at 505.

Third, before access to a judicial record may be restricted it must be shown that impoundment will effectively serve the interest asserted by the proponents of closure. *Press-Enterprise II*, 478 U.S. at 13-14; *Press-Enterprise I*, 464 U.S. at 510 (restriction on public access must be "essential" to preserve higher values). *See also Pokaski*, 868 F.2d at 505 ("the means chosen by the state must *effectively* promote the statute's objectives") (emphasis added). Absent such a showing, there can be no assurance that a limitation on public access is anything but an exercise in futility. *See generally Globe*, 457 U.S. at 610; *Smith v. Daily Mail Publishing Co.*, 443 U.S. 97, 110 (1979) (Rehnquist, J., concurring).

Finally, in those rare circumstances where access to a judicial record may be limited, the justification for the restriction must be articulated in specific findings made by the trial court sufficient to enable appellate review. *Richmond Newspapers*, 448 U.S. at 581; *Press-Enterprise II*, 478 U.S. at 13-14.

Although the Globe does not have the benefit of having examined any portion of the record in this proceeding, it respectfully submits that neither the government nor the defendant can satisfy the extraordinary standard required to justify an order sealing the entire case file and docket.

For example, although "[n]o right ranks higher than the right of the accused to a fair trial," *Press-Enterprise I*, 464 U.S. at 508, the Supreme Court has held that a defendant's fair trial rights can justify a closure order only if "specific findings are made demonstrating that, first, there is a *substantial probability* that the defendant's right to a fair trial will be prejudiced by publicity that closure *would prevent* and, second, reasonable alternatives to closure cannot adequately protect the defendant's fair trial rights." *Press-Enterprise II*, 478 U.S. at 14 (emphasis added). This is a formidable standard to meet, as evidenced by the fact that the trial court in *Press-Enterprise I* erred by basing a closure order on findings of a "reasonable likelihood" of harm to the defendant's fair trial rights rather than the constitutionally required standard of a "substantial probability" that such harm would occur. 478 U.S. at 5, 14-15.

It is clear, therefore, that concerns about the defendant's fair trial rights cannot support the closure order entered in this case. The fact that publicity about a case has been widespread or that jurors have obtained some knowledge about a case does not prove that a defendant's fair trial rights have been violated. *United States v. Stackpole*, 811 F.2d 689, 697 (1st Cir. 1987). *See also Patton v. Yount*, 467 U.S. 1025, 1035 (1984) ("[T]he relevant question is not whether the community remembered the case, but whether the jurors ... had such fixed opinions that they could not judge impartially the guilt of defendant[s]"); *Mu'Min v. Virginia*, 500 U.S. 415 (1991) (barrage of publicity before murder trial that included numerous items of inadmissible, prejudicial information did not require questioning of individual jurors about the content of the publicity, even where eight of twelve individuals seated admitted some exposure to pretrial publicity). Moreover, through jury voir dire, "a court can identify those jurors whose prior knowledge of the case would disable them from rendering an impartial verdict." *Press-Enterprise II*, 478 U.S. at 15. In this manner, criminal defendants in other cases have received

fair trials despite extensive pretrial publicity. *See e.g., United States v. Anguillo*, 897 F.2d 1169, 1180-1184 (1st Cir.), *cert. denied*, 498 U.S. 845 (1990); *United States v. Moreno Morales*, 815 F.2d 725, 730-36 (1st Cir.), *cert. denied*, 484 U.S. 966 (1987). Generalized concerns about the defendant's fair trial rights therefore cannot justify the closure order.

Nor can the government -- with or without the defendant's consent -- conduct entire criminal proceedings behind closed doors based on generalized concerns about its investigatory or prosecutorial needs. Here too, the government would be required to demonstrate (1) a *substantial probability* that public access would harm a compelling governmental interest; (2) that a blanket closure order would be an effective means of serving that compelling governmental interest; and (3) that there are no less restrictive alternative means -- such as partial redaction of particular documents -- of protecting the compelling interest at issue. *See generally Providence Journal*, 293 F.3d at 15 (citing *Globe Newspaper Co.*, 729 F.2d at 56) ("[r]edaction constitutes a time-tested means of minimizing any intrusion on [the public's right of access"). Even in terrorism cases, blanket closure of all aspects of a case has not been required. *See generally United States v. Moussaoui*, 65 Fed. Appx. 881 (4th Cir. 2003) (unpublished) (distinguishing between closure of classified and unclassified portions of record on appeal). The good faith belief of a prosecutor or a defendant that his or her case will benefit if allowed to be conducted in secret is wholly insufficient to reverse the constitutional presumption of access, or to allow a blanket sealing and closure order from the start to the finish of any case. The order sealing and closing all proceedings and records of this case therefore should be vacated.

C.   **The Public Has a Common Law Right of Access to the Proceedings and Records of this Case.**

Apart from the First Amendment, there is a longstanding and strong common law presumptive right to inspect and copy judicial records. *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978).[1] Under the common law, "[o]nly the most compelling reasons can

---

[1] *See generally Stone v. University of Maryland Medical System Corp.*, 855 F.2d 178, 180 (4th Cir. 1988); *Bank of America National Trust and Savings Ass'n v. Hotel Rittenhouse Associates*, 800 F2d 339, 343 (3d Cir. 1986);

justify non-disclosure of judicial records." *In re Knoxville News-Sentinel Co.*, 723 F.2d 470, 476 (6th Cir. 1983). The party seeking to seal bears the burden of persuasion. *Federal Trade Comm'n v. Standard Financial Management*, 830 F.2d 404, 411 (1st Cir. 1987); *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988). Conclusory assertions of the need for closure are not accepted as surrogates for hard facts, and doubts are to be resolved in favor of public access. *Continental Illinois Securities Litigation*, 732 F.2d at 1313; *Standard Financial Management*, 830 F.2d at 412; *Siedle v. Putnam Investments, Inc.*, 147 F.3d 7, 10 (1st Cir. 1998).

The public's common law right of access is "no paper tiger." *Standard Financial Management*, 830 F.2d at 410. Like the public's First Amendment right of access, the common law right "stems from the premise that public monitoring of the judicial system fosters the important values of 'quality, honesty and respect for our legal system.'" *Siedle*, 147 F.3d at 9-10, quoting *Standard Financial Management*, 830 F.2d at 410. Those values dictate that this case, like the overwhelming majority of criminal prosecutions conducted in the United States, be conducted in the open, allowing public access to the proceedings, case file, and docket.

## CONCLUSION

For the foregoing reasons, Globe Newspaper Company, Inc. respectfully requests that its Motion for Access be allowed.

| | |
|---|---|
| **OF COUNSEL:** | **GLOBE NEWSPAPER COMPANY, INC.** |
| | By its attorneys, |
| David E. McCraw, Esq. | |
| **The New York Times Company** | _____ |
| 229 West 43rd Street | Jonathan M. Albano, BBO #013850 |
| New York, NY 10036 | Neil McGaraghan, BBO #649704 |
| (212) 556-4031 | **BINGHAM MCCUTCHEN LLP** |
| | 150 Federal Street |
| | Boston, MA 02110-1726 |
| Dated: April 29, 2005 | (617) 951-8000 |

---

*Brown & Williamson Tobacco Corp. v. Federal Trade Commission*, 710 F.2d 1165, 1179 (6th Cir. 1983); In the Matter of *Continental Illinois Securities Litigation*, 732 F.2d 1302, 1308 (7th Cir. 1984).